## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

DONITA RAY,                          )
                                     )
    Plaintiff,               )
                                     )
vs.                                  )          Case No. CIV-14-309-F
                                     )
CAROLYN W. COLVIN, Acting            )
Commissioner Social Security         )
Administration,                      )
                                     )
    Defendant.               )

## REPORT AND RECOMMENDATION

Donita Ray (Plaintiff) invoked the court's jurisdiction under the Social Security Act to obtain judicial review of the Defendant Acting Commissioner's (Commissioner) final decision denying Plaintiff's application for disability insurance benefits. *See* 42 U.S.C. § 405(g). United States District Judge Stephen P. Friot then referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). The undersigned carefully reviewed the pleadings, the administrative record (AR), and the parties' briefs, and, for the following reasons, now recommends that Judge Friot affirm the Commissioner's decision.

## I.     Determination of disability.

Plaintiff alleges disability as of March 24, 2011. AR 40. The Social Security Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a familiar five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps).

Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *see also Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If she succeeds, the administrative law judge (ALJ) will conduct a residual functional capacity (RFC) assessment at step four to determine what Plaintiff can still do despite her impairments. *See* 20 C.F.R. § 404.1545(e); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993).[1] Then, if Plaintiff shows she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1945(a)(1).

## II.   Analysis.

### A.   Standard of review.

The court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

### B.   Claims of error.

#### 1.   Whether the ALJ erred at step three in evaluating the severity of Plaintiff's mental impairments.

At the third step of the sequential inquiry, the ALJ "consulted the Listing of Impairments contained in Appendix 1, Subpart P, of Regulation No. 4," AR 18, and generally concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.* at 15.[2]

In reaching this conclusion, the ALJ "considered section 12.00, Mental Disorders, specifically 12.04 Depressive Disorder, and 12.06 Anxiety-related

---

[2]     Unless otherwise indicated, citations in this report are reproduced verbatim.

disorder" and determined that "[t]he severity of [Plaintiff's] mental impairments . . . do not meet or medically equal the criteria of listings 12.04 and 12.06." *Id.* at 17.[3] The ALJ grounded this finding on his evaluation of "whether the 'paragraph B' criteria" were satisfied. *Id.* He explained that in order

> [t]o satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

*Id.*

The ALJ found that Plaintiff had moderate limitations or restrictions in her activities of daily living, in her social functioning, and in her concentration, persistence, or pace, and he detailed the evidence in support of each of those findings. *Id.* He further determined that Plaintiff had not experienced any episodes of decompensation. *Id.* He then concluded that "[b]ecause [Plaintiff's] mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." *Id.*

---

[3] The ALJ made additional, unchallenged findings at step three. AR 15-18.

### a. Plaintiff's specific points of error.

Plaintiff's overarching claim is that the ALJ erred in determining that the paragraph B criteria were not satisfied. Doc. 10, at 13-17. Nonetheless, she does *not* challenge the legitimacy – factual or legal – of the evidence cited by the ALJ to support his findings. *Id.* Rather, she points to a medical source statement completed by her "treating doctor, Dwayne Roush, M.D.," and argues that "[t]he marked limitations contained in Dr. Roush's opinion indicate that [she] would be markedly to extremely limited not only in sustained concentration and persistence, but also in the area of social functioning." *Id.* at 14. She concludes that she "would meet the 'B' criteria for the listings under Dr. Roush's opinion." *Id.*

The ALJ rejected Dr. Roush's medical source statement, and Plaintiff faults that decision on two specific fronts, arguing it is: (1) "extremely confusing and done in error," *id.*, and (2) not in keeping with the requirements of the treating physician rule. *Id.* at 15-17.

### b. Plaintiff's treatment with Drs. Roush and Joshi and the doctors' opinions.

The ALJ detailed Plaintiff's treatment at Variety Care with Dr. Roush – whom Plaintiff described as "a psychiatrist or psychologist" – and with Dr. Joshi, her "primary care physician." AR 14, 471-72, 50-51, 48. He noted that Plaintiff

first established care with Dr. Joshi on December 6, 2011, reporting hypertension and polycystic syndrome. *Id.* at 14 (citing 471-72). He further noted that "Dr. Joshi opined [Plaintiff's] diagnosis was morbid obesity and tobacco disorder." *Id.* at 14, 472.

Plaintiff saw Dr. Joshi again on January 11, 2012, on complaints of a sore throat and congestion, fatigue, "low mood and not motivated to work." *Id.* at 14, 478. The ALJ noted that "Dr. Joshi opined on January 11, 2012, [Plaintiff's] diagnosis was pharyngitis acute, Dysmetabolic syndrome, depression with anxiety, and polycystic ovary." *Id.* at 14, 479. Dr. Joshi started Plaintiff on Celexa for her depression with anxiety. *Id.* at 479.

The ALJ then reviewed Plaintiff's treatment history with Dr. Roush and explicated the doctor's findings:

> Dwayne L. Roush, M.D., saw the claimant on April 4, 2012, wherein the claimant reported that she was doing well on the Celexa and Xanax. The claimant seemed appropriate, with some nightmares and trouble sleeping for the last four days (Exhibit 17F/1). On April 25, 2012, the claimant's reported primary problem was stress. The doctor stressed she needed to learn how to manage stress better and develop coping skills or behavioral strategies.

> On August 6, 2012 (Exhibits 18F and 19F), Dwayne L. Roush, M.D., saw the claimant who reported that she seemed to be doing better with her medications, but was still having panic attacks and noticing more anxiety. She reported that she had difficulty going out in public and the last time she went out-of-town with a friend she had a severe panic attack. The doctor observed that the claimant seemed somewhat anxious but her thoughts appear intact.

The claimant was to continued her medications and report back to the doctor in four months.

Dr. Roush completed a Medical Source Statement – Mental on August 6, 2012 (Exhibit 18F). The doctor opined the claimant was extremely limited in her ability to perform activities within a schedule, maintain a regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Furthermore, Dr. Roush opined the claimant was extremely limited to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to changes in the work setting; and, to travel in unfamiliar places or use public transportation.

Dr. Roush opined the claimant was markedly limited in her ability to make simple work-related decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get alone with co-workers or peers without distracting them or exhibiting behavior extremes; and, and to set realistic goals or make plans independently of others.

Dr. Roush opined the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions; carry out very short and simple instructions; to maintain attention and concentration for extended periods; and, to be aware of normal hazards and take appropriate action. The doctor bases this report on his clinical findings and diagnosis (Exhibit 18F).

*Id.* at 14-15.

### c.  The ALJ's analysis of the treating physicians' opinions.

The ALJ subsequently evaluated the opinions expressed by the treating physicians of record, including those by Dr. Roush:[4]

> Dwayne Roush, M.D. and Bharat Joshi, M.D., claimant's treating physicians, together saw the claimant.  His notes and opinions have been given controlling weight as noted at Exhibits 14F, 17F, and 18F).  A review of their treating records reveals a combination, which reveals the claimant's mental and physical allegations and their treatment of her. The claimant's complaints of multiple problems are not to the extent the claimant wishes found to be mentioned in their notes.  Moreover, these doctors have listing the claimant's major problems, but while the claimant may have complained of many aches and pains but they have not been noted in this doctor's progress notes.  Particularly, Doctors Roush and Dr. Joshi note the claimant has ignored their combined instructions to stop smoking, lose weight, diet, and exercise.  The claimant's condition has been treated conservatively with medications.  Ken D Bowlware, M.D. (Exhibit 5F) treated the claimant for emesis, nausea, fatigue, chronic back pain all of which are controlled conservatively with medications.  The Administrative Law Judge has considered Dr. Roush, Dr. Joshi, and Dr. Bowlware's opinions and has given them controlling weight, as they are consistent with each other as noted in those exhibits.

> Dr. Roush notes and treatment records do no match the doctor's statements that he made in the Medical Source Statement (Exhibit 19F).  Dr. Roush considered the claimant to be extremely limited, markedly limited and moderately limited in her ability to perform a wide range of activities.  Dr. Roush is no doubt a fine physician; however, this report is out of proportion to the notes, which are found in the medical evidence of record.  Thus, the Administrative Law Judge gives little weight to the opinion of Dr. Roush's Medical

---

[4]  The ALJ identified Drs. Roush, Joshi, and Bowlware as Plaintiff's treating physicians.  AR 23.

Source Statement – Mental on August 6, 2012 (Exhibit 18F). Dr. Roush's notes have not stated the claimant could not perform some type of work activity.

*Id.* at 23.

### d. Whether the ALJ's mistakes in decision-writing require remand.

Plaintiff argues that "[t]he ALJ's decision is extremely confusing and done in error. He first gives Dr. Roush controlling weight, and then gives him little weight without adequate reason's for the change." Doc. 10, at 14-15. The undersigned agrees that the ALJ's decision is, at times, difficult to follow and that the ALJ, at times, confuses Exhibit 18F with Exhibit 19F. *See* AR 23. But notwithstanding his citation mistakes, the ALJ makes it abundantly clear that he is drawing a distinction between Drs. Joshi and Roush's findings and opinions set out in their treatment notes, "as noted at Exhibits 14F, 17F, and 18F,"[5] and those opinions voiced by Dr. Roush in "the Medical Source Statement (Exhibit 19F)."[6] *Id.* He finds the treatment note findings and opinions merit controlling weight but he "gives little weight to the opinion of Dr. Roush's Medical Source

---

[5]    The ALJ should have cited to Exhibits 14F, 17F, and *19*F.

[6]    Conversely, the ALJ should have cited to Exhibit *18*F.

Statement - Mental on August 6, 2012 (Exhibit 18F)." *Id.*[7] The ALJ's intent is apparent, and, accordingly, his mistaken citation of Exhibits 18F and 19F does not serve to prevent a meaningful review of his decision or to otherwise "undermine confidence in the determination of this case." *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993).

### e. Whether the ALJ properly rejected Dr. Roush's medical source statement.

The ALJ considered the opinions provided by the treating physicians of record under the familiar treating-physician rule. AR at 23. In applying the rule, an ALJ must give a treating physician's medical opinion "controlling weight" if it is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques'" and is not "'inconsistent with the other substantial evidence in the case record.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). Even if the ALJ determines at this first step of the two-stage inquiry that a treating physician's medical opinion is not entitled to "controlling weight, it is still entitled to deference; at the second step of the analysis, the ALJ must make clear how much

---

[7]    Here, the ALJ correctly identifies the medical source statement as Exhibit 18. AR 23. And, contrary to Plaintiff's assertion, the ALJ did "not pick and choose portions of a medical opinion, crediting only the portions that support his opinion and ignoring the portions supporting [Plaintiff's] allegations." Doc. 10, at 15. He gave little weight to – that is, he rejected – the entirety of Dr. Roush's medical source statement. AR 23.

weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the [applicable] regulations for this purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331.

"[T]he ALJ's findings must be sufficiently specific to make clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reason for that weight." *Id.* (alteration and internal quotation marks omitted). Nonetheless, the ALJ need not "apply expressly" every factor because "not every factor for weighing opinion evidence will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (alteration omitted). "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted). Here, the ALJ effectively rejected Dr. Roush's medical source opinion by giving it little weight. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir.

2012) (equating an ALJ's decision to "accord[] little weight" to an examining physician's opinion with a rejection of the opinion).

The ALJ found that Dr. Roush's medical source statement – voicing the opinion that Plaintiff had "no useful ability to function" in various work-related areas, AR 485-86 – was tantamount to Dr. Roush stating that Plaintiff "could not perform some type of work activity." AR 23. The ALJ not only declined to give the statement controlling weight but he fully rejected it. *Id.* He did so because the medical source statement was not consistent with or supported by what Dr. Roush termed his own "Clinical Findings." *Id.* at 486. The ALJ found (1) the statement was "out of proportion to the notes, which are found in the medical evidence of record" and (2) that Dr. Roush had not indicated in his treatment notes that Plaintiff's depression with anxiety precluded her from performing some type of work activity. *Id.* at 23.

Plaintiff asserts error, arguing that "the ALJ's reasoning is not specific or legitimate." Doc. 10, at 16. With regard to the ALJ's finding that Dr. Roush's medical source statement was disproportionate to his treatment notes, Plaintiff contends that the ALJ only "gives a vague reasoning to justify giving Dr. Roush's opinion little weight," "fail[ing] to point to which specific evidence to which he is referring." *Id.* To the contrary, the ALJ's decision documents the clinical findings made by Dr. Roush on the dates – April 4, 2012 and August 6, 2012 –

that he saw Plaintiff before providing his August 6, 2012 medical source statement. AR 14-15. The ALJ specifically noted Dr. Roush's April 4, 2012 finding that Plaintiff "seems to be doing well on celexa and xanax, she seems appropriate," and his August 6, 2012 finding that Plaintiff "seems somewhat anxious but her thoughts appear intact." *Id.* at 14-15, 476, 487. Plaintiff's claim of lack of specificity is unavailing.

Equally unavailing is Plaintiff's argument with regard to the ALJ's rejection of Dr. Roush's work-preclusive medical source statement on the grounds that the doctor's treatment notes had not implicated Plaintiff's inability to "perform some type of work activity." *Id.* at 23. Plaintiff maintains the ALJ's rationale lacks legitimacy because "[w]hile it may be true that Dr. Roush did not specifically state in his notes that [Plaintiff] could not perform some type of work activity, he also did not state that [Plaintiff] was able to perform some type of work activity." Doc. 10, at 16. But Plaintiff's circular reasoning does not undercut the legitimacy of the ALJ's determination that the crux of Dr. Roush's medical source statement – that Plaintiff is unable to work – was not forecast by the doctor's clinical findings.

Plaintiff also claims that Dr. Roush's opinion is consistent with other medical and opinion evidence of record. *Id.* at 16-17. Specifically, Plaintiff points to three findings by Stephanie Crall, Ph.D., a consultative examining

psychologist. First, Dr. Crall observed that Plaintiff "appeared extremely anxious".[8] *Id.* at 16. Second, Dr. Crall found during the mental status examination that: (1) Plaintiff's functional memory was not seen as being intact based on an inability to recall three objects after a five-minute period during which she had been given other tasks; and (2) Plaintiff was unable to solve certain math problems, one involving money.[9] *Id.* at 17. Third, Plaintiff points to Dr. Crall's opinion that Plaintiff's "ability to engage in work related mental activities, such as sustaining attention, understanding, and remembering and to persist at such activities was likely adequate for some simple tasks, but was substantially impaired in regard to other simple or complex tasks." *Id.* at 17

---

[8] Dr. Crall first noted that Plaintiff "was alert, oriented, pleasant, and cooperative throughout the evaluation" and that "[h]er speech was logical, goal directed, and fully intelligible." AR 433. Dr. Crall observed "[n]o difficulties with posture, gait, or motor behaviors." *Id.* She noted that Plaintiff drove to the examination but reported that she was limited to driving short distances. *Id.* Dr. Crall also observed that Plaintiff's "grooming appeared adequate." *Id.*

Plaintiff described the symptoms of her anxiety to Dr. Crall – "a tendency to pick at her skin, feel as though she was going to 'pass out', perspire, feel nauseated, and experience an increase in heart rate, chest pains, and difficulty breathing whenever she became nervous" – and advised that she had experienced these symptoms on a daily basis "for as long as she could recall." AR 433-34. The undersigned notes that Plaintiff, who was twenty-nine years old on her alleged onset of disability date, worked consistently from 1997 until 2011. *Id.* at 144, 218-25.

[9] Dr. Crall opined that Plaintiff was "capable of managing her own funds." AR 435.

(emphasis omitted); AR 434-35.[10] Plaintiff also points to the fact that her counselor at Variety Care rated her global assessment of functioning (GAF) at 45 on intake and to the ALJ's failure to discuss the score. Doc. 10, at 17; AR 482.[11]

But Plaintiff does not explain how the cited findings and observations support Dr. Roush's medical source statement that Plaintiff has "*no useful ability*:" "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "to sustain an ordinary routine without special supervision"; "to work in coordination with or proximity to others

---

[10]     The ALJ, who found that Plaintiff could understand, remember, and carry out simple tasks under routine supervision, considered Dr. Crall's opinion and gave it significant weight. AR 18, 24.

[11]     "The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012). A GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (internal quotation marks omitted). Here, Plaintiff's counselor assessed a GAF score of 45 but did not provide a rationale for the rating. AR 482. As such, the ALJ was not required to discuss the score. *See Davison v. Colvin*, No. 14-1122, 2014 WL 7240066, at *6 (10th Cir. Dec. 22, 2014) (unpublished op.) ("[Plaintiff's] GAF scores did not include explanations for the ratings given and, further, did not indicate that [Plaintiff] was unable to work. Accordingly, these lower GAF scores do not undermine the ALJ's conclusion concerning the seriousness of [Plaintiff's] mental status or ability to work.").

without being distracted by them"; "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; "to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness"; "to respond appropriately to changes in the work setting"; or "to travel in unfamiliar places or use public transportation." AR 485-86 (emphasis added).

Plaintiff has failed to establish that the ALJ improperly rejected "[t]he marked limitations contained in Dr. Roush's opinion indicat[ing] that [Plaintiff] would be markedly to extremely limited not only in sustained concentration and persistence, but also in the area of social functioning," limitations which Plaintiff claims would have satisfied "the 'B' criteria for the listings under Dr. Roush's opinion." Doc. 10, at 14.

### 2. Whether "[t]he ALJ failed to derive a proper RFC." Doc. 10, at 18.

"After careful consideration of the entire record," the ALJ considered the functional impact of Plaintiff's impairments and determined that she was

limited to light work as defined in 20 C.F.R. § 404.1567(b). AR 18.[12] He found

that she was further restricted by postural limitations resulting from her obesity

and back pain and was limited to work requiring her to do no more than

understand, remember, and carry out simple tasks under routine supervision.

*Id.* The ALJ found Plaintiff unable to perform work that requires "active

involvement with the general public," or work where she would be expected to

do more than "relate superficially with co-workers and supervisors for work

purposes." *Id.*

Plaintiff contests the legal sufficiency of the ALJ's physical RFC

assessment, first, because it is not expressed in terms of work-related functions.

Doc. 10, at 19. She argues that "the ALJ failed to indicate how much he found

that [Plaintiff] could sit, stand, or walk" but "[i]nstead, . . . merely expresse[d

Plaintiff's] RFC in terms of 'light work'." *Id.* Plaintiff relies on SSR 96-8p, 1996

WL 374184, at *1, where the Social Security Administration generally

---

[12]     By agency regulation,

Light work involves lifting no more than 20 pounds at a time
with frequent lifting or carrying of objects weighing up to 10
pounds. Even though the weight lifted may be very little, a job is
in this category when it requires a good deal of walking or standing,
or when it involves sitting most of the time with some pushing and
pulling of arm and leg controls.

20 C.F.R. § 404.1567(b).

emphasized that

> [t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

*Id.* Pointing to the ALJ's failure to "address how much sitting, standing, or walking" that she would be able to do, Plaintiff contends "[t]his is particularly relevant given [her] problems with swelling in her legs and [her] testimony regarding her difficulty walking." Doc. 10, at 19. She adds that "[t]he ALJ even discusses that [she] does have issues with swelling [and i]n fact, the ALJ fails to also list the need for [her] to elevate her legs." *Id.*

With regard to the ALJ's failure to follow SSR 96-8p, the Ruling makes a distinction between how the RFC must be expressed at step four and at step five. SSR 96-8p, at *3. At step five, the step reached in this case, "RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do." *Id.*[13] Nonetheless, "[t]he Ruling says that a function-by-function analysis is also important at step 5, when the ALJ determines whether there is other work that

---

[13]     The ALJ found that Plaintiff was unable to do a full range of light work, AR 18, 25, and, he did not rely on the Medical-Vocational Guidelines for a directed finding of non-disability. *Id.* at 25. *See* SSR 96-8p, at 4.

the claimant could do by applying of the Medical–Vocational Guidelines." *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014). "The concern is that, without a function-by-function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Id.* (quoting SSR 96-8p, at *4).

Plaintiff does not direct the court to any functional limitation imposed by a medical source on sitting, standing, or walking that was overlooked by the ALJ. Doc. 10, at 18-19.[14] And, a review of the record reveals that Edward S. Bocian, M.D, a State agency medical consultant, completed a physical RFC assessment in which he concluded that despite her physical impairments, Plaintiff retained the ability to stand and/or walk for about six hours in an eight-hour work day and to sit for the same time period. AR 456. This assessment provided factual support for the ALJ's determination that Plaintiff retained the capacity to perform a limited range of light work. *Id*. at 20, 24. "In this case, the ALJ's failure to find explicitly that [Plaintiff] was capable of"

---

[14] With respect to Plaintiff's assertion that "the ALJ fails to also list the need for [Plaintiff] to elevate her legs," she, once again, does not direct the court to objective or opinion evidence as support. Doc. 10, at 19. Rather, her brief indicates that Plaintiff expressed that need as part of her subjective testimony. *Id.* at 11. *See Effinger v. Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (holding that the court "will not comb through the record where counsel has not provided specific references tied to an argument").

certain periods of sitting, standing and/or walking "was not critical to the outcome of the case, and [Plaintiff] has not demonstrated error." *Hendron*, 767 F.3d at 957.

Plaintiff's second challenge to the ALJ's assessment of her RFC is that he "failed to properly consider [her] obesity and how it would affect abilities to sit, stand, or walk." Doc. 10, at 19. She relies on SSR 02-1p, 2000 WL 628049, at *1, and argues that the Ruling requires the ALJ to not only consider the effects of a claimant's obesity but to also consider the combined effects of obesity with other impairments. *Id.*

The ALJ found that Plaintiff "is 5' 4" tall and she weighs 389 pounds." AR 13. He initially considered her obesity in making his step three findings:

> The claimant's obesity was evaluated under Social Security Ruling 02-1p, and her obesity was not of such a level that it resulted in an inability to ambulate. Her gait was normal for speed, stability, and safety; she did not require any assistive devices. There is no report of shortness of breath, cardiovascular or musculoskeletal body system complications caused by obesity. The claimant was encouraged to exercise and diet, which she has not done. The record does not establish that his/her obesity has increased in severity or coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.

*Id.* at 16. In addition, the ALJ recognized that "[o]besity can cause limitation of function." SSR 02-1p, at *6. He considered Plaintiff's obesity in evaluating her RFC, finding postural function limitation "due to obesity and back pain."

AR 18.

Plaintiff – who fails to acknowledge the ALJ's findings – does not cite to any authority requiring that the ALJ do more and has not established that "[t]he ALJ failed to properly consider" her obesity.  Doc. 10, at 19.

Plaintiff concludes her RFC challenges by faulting the ALJ's failure to assess any limitations – non-exertional or environmental – resulting from her asthma and sleep apnea.  *Id*. at 20.  Nevertheless, she fails to reference evidence of a corresponding functional limitation imposed by a medical source.  *Id*.

### 3. Whether the ALJ's credibility assessment was improper.

Plaintiff's final claim of error purports to challenge the ALJ's extensive assessment of the believability of her contention that she suffers from *disabling* mental limitations.  *Id*. at 20-21.[15]  She maintains that Dr. Roush's opinion – an opinion the ALJ properly rejected – supports her complaints as does evidence of record from the consultative examining psychologist, Dr. Crall.  *Id*. at 20.  The undersigned has fully addressed Dr. Crall's findings.  *See supra* § II.B.1.e.  Plaintiff fails to demonstrate that these findings support a conclusion contrary to one reached by the ALJ in determining the credibility of her subjective complaints:  that while her claims concerning the intensity, persistence, and

---

[15] *See* AR 21-25.

limiting effects of her alleged symptoms are not entirely incredible, her claim that she suffers from limitations which preclude her from engaging in all substantial gainful activity is simply not believable.  AR 24.

## III.  Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends that Judge Friot affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this Report and Recommendation by the 20th day of April, 2015, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 31st day of March, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE